[Cite as *State v. Turner*, 2014-Ohio-4678.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2014CA00058 |
| MICHAEL DEAN TURNER | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Criminal appeal from the Stark County
Court of Common Pleas, Case No.
2013CR1788

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: October 20, 2014

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOHN FERRERO                          DEREK LOWRY
Stark County Prosecutor                Crawford, Lowry & Associates
BY: KATHLEEN TATARSKY                116 Cleveland Avenue N.W., Ste. 800
110 Central Plaza South, Ste. 510      Canton, Oh  44702
Canton, OH  44702

*Gwin, P.J.*

{¶1}    Appellant Michael Turner ["Turner"] appeals his convictions and sentences on one count of felonious assault and one count of tampering with evidence after a jury trial in the Stark County Court of Common Pleas.

*Facts and Procedural History*

**The 9-1-1 call.**

{¶2}    On Thursday, November 14, 2013 around 9:00 pm, Doris Henderhan placed a call to 9-1-1 from her apartment on Dueber Avenue in Canton, Ohio. She told dispatch that she heard a lot of fighting at her neighbor's apartment - apartment number three - between the tenant and her boyfriend. She told dispatch that "Vetta" was hurt lying on the floor with blood on her shirt. She identified the boyfriend as a Mike Turner. Henderhan told dispatch the boyfriend would not let her in and tried to shut the door on her, telling her he was going to take "Vetta" to the hospital. Henderhan decided to call 9-1-1 for an ambulance.

{¶3}    Canton Police Officers Anthony Jackson and Scott Jones were dispatched for the trouble call. As they got to the entrance door, they saw a male walking down the stairs. He was carrying a bag of dog food, a dog bowl, a dog leash and a little black puppy. The male told the officers his name was Michael Taylor. That raised a suspicion, but the officers could not remember the exact name dispatch entered as the potential assailant, so Officer Jackson called dispatch. Meanwhile, the officers allowed the male to leave to take the puppy out. Being suspicious, however, the officers followed the male and saw him take something out and throw it with his right hand. Officer Jones testified,

He [Turner] reaches into his coat, pulls out something, throws it, it appears to be a T-shirt, and then I see the knife come free from the T-shirt, hit the top of the shed belonging to the witness's house, rolls down the shed and into a trash can, at which point I realized it was evidence, and we ran up to him and apprehended him.

1T. at 222. Dispatch came back with the suspect's name and Turner was placed in handcuffs and arrested. Seeing blood on the T-shirt, Officer Jackson immediately returned to the apartment and saw the victim - Lavetta Moore - lying on the floor by the front door. She had no top on and Officer Jackson observed blood from multiple puncture marks in and around her upper chest and shoulder area. Moore was incoherent and fading in and out of consciousness. An ambulance arrived and took Moore to Aultman Hospital.

**The investigation.**

{¶4} After Turner was secured, Officer Jones walked around the scene with his flashlight. He observed the white T-shirt covered in blood in the back yard of a neighbor. He observed the knife thrown by Turner in the garbage can in the same back yard. The T-shirt and knife were photographed and collected by Police Officer Jeffrey Weller.

{¶5} Also photographed and collected was a knife found on the couch in the victim's residence. The knife found in the garbage can - a paring knife with a three-inch blade - and the bloodied t-shirt were tested for fingerprints and DNA by the State BCI crime laboratory in Richfield, Ohio.

{¶6} Detective Robert Redleski was assigned to investigate the case. He went to the hospital to talk with Moore and took a taped statement from her. Moore told

Detective Redleski that Turner started getting mean, poked her in the head, hit her in the eye, went to get a knife, pushed her down and stabbed her. Redleski also talked with Doris Henderhan and Paul Grant, the neighbor in whose backyard the bloodied T-shirt and paring knife were found. Grant told the officers the items were not his. Redleski also obtained DNA samples from Moore and Turner.

{¶7} The DNA samples were sent to the State BCI crime laboratory, together with the shirt and sweatpants worn by Turner on the night he was arrested. Turner's shirt and sweatpants contained the blood of the victim.

**The trial.**

{¶8} Turner was indicted by a Stark County Grand Jury on one count of felonious assault a violation of R. C. 2903.11(A)(2), a felony of the second degree and one count of tampering with evidence a violation of R. C. 2921.12(A)(1), a felony of the third degree. The charges stemmed from the stabbing of Lavetta Moore on November 14, 2013 with a paring knife, removing her bloodied shirt and disposing of the shirt and knife in the backyard of a neighboring home, Bill of Particulars, Jan. 3, 2014.

{¶9} On March 17, 2014, Turner's jury trial began. The trial court, during voir dire, asked the potential jurors whether they or any member of their families or close friends were ever involved with the criminal justice system. Juror No. 29 indicated he was charged and found guilty of possession of cocaine in 2010 in the Stark County Common Pleas Court. He was found guilty, sentenced to three years intensive supervision and did eight months. When asked if he thought he was treated fairly, Juror No. 29 responded, "I guess so." When asked if he thought the City of Canton police officers treated him fairly, the juror responded, "It was okay. But overall — overall, I give

like 99.9 percent satisfaction overall rate on everything." The juror then stated that he could be fair and impartial. The state exercised a peremptory challenge as to Juror No. 29.

{¶10} Moore testified that Turner did not stab her; rather she stabbed herself. She disavowed her previous statements to investigating officers, claimed she did not remember them because she was under the influence of drugs, alcohol, morphine and mental illness. Indeed, she wrote two affidavits that were presented to the jury again stating she stabbed herself and put her bloody shirt outside where the police officers found it.

{¶11} Because of the inconsistent statements made by Moore, the trial court declared her a hostile witness and allowed the state to cross-examine her. The court also appointed an attorney to assist the witness during her testimony. As a result, at times Moore pleaded the Fifth Amendment in answer to questions.

{¶12} The jury was excused and the trial court reminded Moore of her responsibility - to testify truthfully. If she thought she might be criminally incriminating herself, she may ask the trial judge if she could consult with her counsel.

{¶13} Turner called no witnesses and did not testify. The parties stipulated to the laboratory report outlining the DNA evidence.

{¶14} After hearing the evidence and receiving instructions from the trial court, the jury returned with a verdict of guilty to the charges of felonious assault and tampering with evidence.

*Assignments of Error*

{¶15} Turner raises four assignments of error,

{¶16} "I. THE TRIAL COURT ERRED IN PERMITTING THE STATE TO USE A PEREMPTORY CHALLENGE IN A RACIALLY DISCRIMINATORY FASHION.

{¶17} "II. THE TRIAL COURT DENIED THE APPELLANT HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS WHEN IT PREVENTED A WITNESS FROM INVOKING HER FIFTH AMENDMENT RIGHT NOT TO TESTIFY.

{¶18} "III. THE APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL WHEN THE JURY WAS INFORMED THAT THE APPELLANT WAS IN CUSTODY.

{¶19} "IV. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

I.

{¶20} A defendant is denied equal protection of the law guaranteed to him by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution when the state places the defendant on trial before a jury from which members of the defendant's race have been purposely excluded. *Strauder v. W. Virginia*, 100 U.S. 303, 305, 25 L.Ed. 664(1880); *State v. Hernandez*, 63 Ohio St.3d 577, 589 N.E.2d 1310(1992); *State v. Bryant*, 104 Ohio App.3d 512, 516, 662 N.E.2d 846(6th Dist. 1995). The "equal protection clause forbids a prosecutor from challenging potential jurors solely on account of their race or on the assumption that jurors of the same race as the defendant will be unable to impartially consider the state's case against the defendant." *State v. Bryant*, 104 Ohio App.3d 516; *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69(1986).

**{¶21}** In his first assignment of error, Turner maintains that the trial court failed to conduct a proper constitutional analysis as outlined in *Batson v. Kentucky*, in determining that the state was not racially motivated in excluding the only African-American from the jury through the use of a peremptory challenge. *See, Hicks v. Westinghouse Materials Co.*, 78 Ohio St.3d 95, 98, 676 N.E. 2d 872(1997); *State v. Toland*, 5th Dist. Stark No. 2006-CA-0162, 2007-Ohio-644.

**{¶22}** Whenever a party opposes a peremptory challenge by claiming racial discrimination "[a] judge should make clear, on the record, that he or she understands and has applied the precise *Batson* test * * *." *Hicks v. Westinghouse Materials Co.*, 78 Ohio St.3d at 99, 676 N.E. 2d 872.

In *Hicks,* the Ohio Supreme Court set forth the *Batson* test as follows:

The United States Supreme Court set forth in *Batson* the test to be used in determining whether a peremptory strike is racially motivated. First, a party opposing a peremptory challenge must demonstrate a prima-facie case of racial discrimination in the use of the strike. Id. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87. To establish a prima-facie case, a litigant must show he or she is a member of a cognizable racial group and that the peremptory challenge will remove a member of the litigant's race from the venire. The peremptory-challenge opponent is entitled to rely on the fact that the strike is an inherently 'discriminating' device, permitting 'those to discriminate who are of a mind to discriminate'. *State v. Hernandez* (1992), 63 Ohio St.3d 577, 582, 589 N.E.2d 1310, 1313, *certiorari denied* (1992), 506 U.S. 898, 113 S.Ct. 279, 121 L.Ed.2d 206. The litigant must

then show an inference of racial discrimination by the striking party. The trial court should consider all relevant circumstances in determining whether a prima-facie case exists, including all statements by counsel exercising the peremptory challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority venire members is present. *See, Batson* at 96-97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. Assuming a prima-facie case exists, the striking party must then articulate a race-neutral explanation 'related to the particular case to be tried.' Id. at 95, 106 S.Ct. at 1724, 90 L.Ed.2d at 88. A simple affirmation of general good faith will not suffice. However, the explanation 'need not rise to the level justifying exercise of a challenge for cause.' Id. at 97, 106 S.Ct. at 723, 90 L.Ed.2d at 88. The critical issue is whether a discriminatory intent is inherent in counsel's explanation for use of the strike; intent is present if the explanation is merely pretext for exclusion based on race*. Hernandez v. New York*, 500 U.S. 352, 363, 111 S.Ct. 1859, 1868, 114 L.Ed.2d 395, 409 (1991).

*Hick,* 78 Ohio St.3d. at 98-99, 676 N.E.2d 872. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive or even plausible"; so long as the reason is not inherently discriminatory, it suffices. *Purkett v. Elem*, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L.Ed.2d 834(1995) (*per curiam*); *Rice v. Collins*, 546 U.S. 333, 126 S.Ct. 969, 163 L.Ed.2d 824(2006).

{¶23} Last, the trial court must determine whether the party opposing the peremptory strike has proved purposeful discrimination. *Purkett v. Elem*, 514 U.S. at 766-767, 115 S.Ct. 1769, 131 L.Ed.2d 834. It is at this stage that the persuasiveness, and credibility, of the justification offered by the striking party becomes relevant. Id. at 768, 115 S.Ct. at 1771, 131 L.Ed.2d 834. The critical question, which the trial judge must resolve, is whether counsel's race-neutral explanation should be believed. *Hernandez v. New York*, 500 U.S. at 365, 111 S.Ct. 1859,114 L.Ed.2d 395; *State v. Nash*, 5th Dist. Stark No. 1995 CA 00024, 1995 WL 767987(August 14, 1995). This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett*, 514 U.S. at 768, 115 S.Ct. 1769, 131 L.Ed.2d 834; *Rice v. Collins*, 546 U.S. at 338, 126 S.Ct. 969, 163 L.Ed.2d 824.

{¶24} It is irrelevant how many minority jurors remain on the panel if even one is excluded because of race. *State v. Bryant,* 104 Ohio App.3d 512, 662 N.E.2d 846 (6th Dist. 1995); *State v. Tuck* 80 Ohio App.3d 721, 724, 610 N.E.2d 591(10th Dist. 1992) (*Batson*, applicable even if there is only one African-American juror on the panel); *Jones v. Ryan*, 987 F.2d 960, 972( 3rd Cir. 1993); *United States v. David*, 803 F.2d 1567(11th Dist. 1986).

{¶25} In the case at bar, the prosecutor voluntarily explained her reasons for the peremptory strikes. *Hicks v. Westinghouse,* 78 Ohio St.3d at 100, 676 N.E. 2d 872; *State v. Hernandez,* 63 Ohio St.3d at 583, 589 N.E.2d 1310; *Hernandez v. New York, supra; State v. Nash, supra.* The state claimed its race neutral basis for striking Juror

No. 29 was because the juror indicated that he had been convicted of possession of cocaine - a felony - in the very same Common Pleas Court in 2010. Moreover, he expressed some reservation with the way his counsel handled the plea. Turner's attorney responded that the juror was African-American; his client was African-American; and that the juror indicated he could be fair and impartial. Trial counsel did not offer any further explanation to make his prima facie case as required in the first step of the *Batson* test. He did not refer to any statements made by the prosecutor that would indicate that the challenge was discriminatory, did not point to a pattern of discrimination and did not point to specific questions in voir dire that would indicate a discriminatory motive. Moreover, even if Turner had met his prima facie burden to go forward on the challenge, the prosecutor gave a race neutral reason for using a peremptory challenge against Juror No. 29.

{¶26}  Turner points to Juror No. 13, presumably white, who the prosecutor did not seek to remove based on a work investigation of sexual abuse, which led to no criminal charges. Yet, Juror No. 13 did not have a felony conviction and was removed for cause by agreement of both Turner and the state because of his opinion that he does not have to follow the judge's instructions. (1T. at 77).

{¶27}  We do not find that the dismissal of Juror No. 29 was in error and we find that the prosecutor's reason for using a peremptory challenge on Juror No. 29 was racially neutral.

{¶28}  Turner's first assignment of error is overruled.

II.

**{¶29}** The Fifth Amendment privilege against self-incrimination provides that no person shall be compelled to be a witness against himself in a criminal case and permits a person to refuse to answer official questions in another proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings. *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S.Ct. 1136, 79 L.Ed.2d 409(1984), citing *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274(1973).

**{¶30}** In his second assignment of error, Turner argues that the trial court failed to follow the procedure set forth in *State v. Reiner,* 89 Ohio St. 3d 342, 352, 2000-Ohio-190, 731 N.E.2d 662, *reversed on other grounds* 532 U.S. 17, 121 S.Ct. 1252[1] when Moore invoked the Fifth Amendment and deprived him of a fair trial.

**{¶31}** The Ohio Supreme Court has held that when a witness asserts a privilege against self-incrimination, a court may not rely upon the witness's claim alone, but has a duty to determine whether the witness's refusal to answer is justified. *State v. Jackson*, 92 Ohio St.3d 436, 447, 751 N.E.2d 946(2001); *State v. Landrum*, 53 Ohio St.3d 107, 120-121, 559 N.E.2d 710(1990). The trial judge must determine if a proposed witness's testimony would be self-incriminating. *See Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 111(1951); *State v. Landrum*, 53 Ohio St.3d at 120-121; *McGorray v. Sutter*, 80 Ohio St. 400, 89 N.E. 10(1909), paragraph two of the syllabus. A

---

[1] The United States Supreme Court reversed *Reiner* "[b]ecause the Supreme Court of Ohio mistakenly held that the witness' assertion of innocence deprived her of her Fifth Amendment privilege against self-incrimination." *Ohio v. Reiner*, 532 U.S. 17, 22, 121 S.Ct. 1252, 1255, 149 L.Ed.2d 158 (2001); *accord State v. Reiner*, 93 Ohio St.3d 601, 604, 757 N.E.2d 1143 (2001) ("Pursuant to *Ohio v. Reiner*, we reverse *Reiner I* to the extent that it held that Batt lacked a valid Fifth Amendment privilege against self-incrimination."). See, *State v. Linkous*, 4th Dist. Scioto No. 12CA3517, 2013-Ohio-5853, n.1.

valid assertion exists where a witness has reasonable cause to apprehend a real danger of incrimination. *United States v. Apfelbaum*, 445 U.S. 115, 127, 100 S.Ct. 948, 63 L.Ed.2d 250(1980); *In re Morganroth* 718 F.2d 161, 167(C.A.6, 1983); *State v. Linkous*, 4th Dist. Scioto No. 12CA3517, 2013-Ohio-5853, ¶55. "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer * * * might be dangerous because injurious disclosure could result. * * *" *Hoffman v. United States*, 341 U.S. 479, 486-487, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). The privilege extends to answers which would furnish a link in the chain of evidence, exposing the witness to criminal liability. Id. at 486; *Blau v. United States*, 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 70(1950); *State v. Landrum*, 53 Ohio St.3d 107, 120-121, 559 N.E.2d 710(1990).

{¶32} If a court determines that a witness is mistaken about the danger of incrimination, the court must then require the witness to answer the question. *Hoffman*, 341 U.S. at 486.

{¶33} The Ohio Supreme Court has noted the extent and type of inquiry that the trial court must conduct,

> Certainly, the modes of inquiry to which the trial judge may resort to ascertain that the claim of the witness is not well founded must not invade his immunity. He must not extort from the witness a statement which would be a plenary confession of guilt, or the statement of a circumstance which in connection with other circumstances would establish his guilt. But if, in any mode consistent with the immunity, he may acquire the basis of a

clear conviction that the claim of the witness is ill founded, he may require

him to answer.

*McGorray v. Sutter*, 80 Ohio St. 400, 411, 89 N.E. 10.

**{¶34}** However, when the court is satisfied that the witness's refusal to answer is justified, a court may either excuse the witness from testifying or, upon the written request of the prosecuting attorney, may compel the witness to answer by granting that person immunity from prosecution for any criminal act about which the person may testify.

*State v. Reiner*, 89 Ohio St.3d 342 at 353, 731 N.E.2d 662; *accord State v. Kirk*, 72 Ohio St.3d 564, 651 N.E.2d 981 (1995), paragraph one of the syllabus.

**{¶35}** In the case at bar, the trial court never engaged in an analysis to determine whether Moore's refusal to answer was justified. However, the Fifth Amendment protects individuals against compelled self-incrimination. It is a personal right that protects only the party subpoenaed to give testimonial evidence. *United States v. Nobles*, 422 U.S. 225, 233, 95 S.Ct. 2160, 2167, 45 L.Ed.2d 141, 150(1975); *Couch v. United States*, 409 U.S. 322, 327, 93 S.Ct. 611, 615, 34 L.Ed.2d 548, 553(1973). The right against self-incrimination is applicable when testimony is compelled from the person claiming to be incriminated by disclosure. *Fisher v. United States*, 425 U.S. 391, 398, 96 S.Ct. 1569, 1574, 48 L.Ed.2d 39, 48-49(1976).

**{¶36}** It is universally accepted that a defendant in a criminal trial has no standing to claim the privilege of a witness nor take advantage of an error of the court in overruling it,

The legal privilege accorded a witness to refuse to testify to facts that would tend to incriminate the witness is personal to the witness, and, if not personally claimed, is waived. The witness is the only one that can claim the privilege of refusing to answer.

'The right to refuse to answer incriminating questions is personal to the witness. To preserve his right he must himself object. If he wishes to answer, he may do so and neither the prosecution nor the accused has a right to object.' *Underhill on Criminal Evidence* (3d Ed.) p. 563, § 389.

The defendant cannot object to a question asked a witness on the ground that the answer would tend to incriminate the witness. Neither has he the right to require the court to instruct the witness that he or she is privileged to refuse to answer such a question. *State v. George*, 214 Mo. 262, 113 S. W. 1116-1118; *Castleberry v. State*, 10 Okl. Cr. 504, 139 P. 132.

Not only has the defendant no right to require the court to instruct the witness regarding his legal rights, but, *if the witness claims the privilege of refusing to answer a question on the ground that his answer would tend to incriminate him, and the court disregards the request, and requires the witness to answer, the defendant has no right to object, and it is not reversible error in the reviewing court, even if the trial Court erred in requiring the witness to answer, and the error tends to prove the defendant guilty of the crime charged.*

\* \* \*

*See, also, State v. Cobley*, 128 Iowa, 114, 103 N. W. 99; *Ingersol v. McWille*, 87 Tex. 647, 30 S. W. 869; *State v. Van Winkle*, 80 Iowa, 15, 45 N. W. 388; *Samuel v. People*, 164 Ill. 379, 45 N. E. 728; *Beauvoir Club v. State*, 148 Ala. 643, 43 So. 1040, 121 Am. St. Rep. 82; *Robinson v. McAbee*, 64 Cal. App. 709, 222 P. 871; *State v. Crisinger*, 197 Iowa, 613, 195 N. W. 998; *State v. Rowley*, 198 Iowa, 613, 198 N. W. 37, 39, 199 N. W. 369. (Emphasis added).

*Orum v. State*, 38 Ohio App. 171, 174-176, 175 N.E. 876(7th Dist. 1930). In *Bowman v. United States*, the Court observed,

It makes no difference, we think, that the two witnesses did attempt to assert the privilege and that the court erroneously overruled their claim of privilege. Where the witness is not the party, the party may not claim the privilege nor take advantage of an error of the court in overruling it. On this point the authorities are practically unanimous. 2 (4 Jones on Evidence, 5th Ed., 1958, § 864, p. 1625; McCormick on Evidence, 195 4, § 73, p. 153, § 133, p. 281; 8 Wigmore on Evidence, McNaughton Rev., 1961, § 2196, pp. 111-12, § 2270, at pp. 414-16; 3 Wharton's Criminal Evidence, 12 Ed., 1955, § 729, pp. 36-37; *Morgan v. Halberstadt*, 2 Cir., 1894, 60 F. 592;. *Taylor v United States*, 2 Cir., 1907, 152 F. 1; *Hudson v. United States,* 5 Cir., 1952, 197 F.2d 845; *Poole v. United States*, 9 Cir., 1964, 329 F.2d 720; *compare Hyster Co. v. United States*, 9 Cir., 1964, 338 F.2d 183, 187; *Goldstein v. United States,* 1942, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312.)

350 F.2d 913, 916(9th Cir 1965).

{¶37} In the case at bar, Moore was a competent witness to testify against Turner regarding the action that took place in the home on November 14, 2013. Whether the court violated her constitutional rights in requiring her, over her assertion of her Fifth Amendment privilege, to testify to these events was no concern to Turner. Her testimony was competent as far as Turner's legal rights were involved. His constitutional rights were not violated by the introduction of Moore's testimony.

{¶38} We conclude that Turner does not have standing to claim Moore's right against self-incrimination was violated.

{¶39} Turner's second assignment of error is overruled.

III.

{¶40} In his third assignment of error, Turner argues that he was denied a right to a fair trial when Detective Redleski, during his trial testimony, mentioned not once but twice that he went to the Stark County Jail in reference to the collection of DNA.

{¶41} Specifically, Detective Redleski testified,

[Prosecutor] ...After collecting her DNA, then what did you do?

[Redleski] At that point, a search warrant was signed by Judge Forchione, and I went to the Stark County Jail and collected...

[Defense Counsel] Objection, Your Honor

[Court] Sustained. Disregard that.

[Redleski] Okay. A search warrant was issued, and I went to the Stark County Jail.

[Defense Counsel] Objection.

1T. at 269-270. Turner then moved for a mistrial. The trial court overruled the motion but gave the jury another limiting instruction,

[COURT] Ladies and gentlemen, in our system, as was discussed during the voir dire process this morning, we take seriously that concept that I went over with you and counsel went over with you, and that is the presumption of innocence. And part of that presumption is that the defendant in any case not be prejudiced by his status. And by that I mean, this witness, on a couple of occasions, has indicated that he went to the jail to get information. That isn't relevant, you have to disregard that. We try to keep that out of a case. Whether or not the Defendant is in jail, not in jail, has nothing to do with this, and you shouldn't draw any negative inferences that that reference was made.

It's very important, I'm very disappointed that that was even — came out, but I'm instructing you that you should not consider that to show that this Defendant is a bad character, that he acted in conformity with that character, he must be in jail for some reason. Forget it, it's not a part of this case and it shouldn't be a part of this case. You're instructed to disregard it. I can't make it any stronger than that, unless I zap all of you or something like that.

So with that, let's proceed.

1T. at 274-275.

{¶42} Pursuant to Crim.R. 52(A), "any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." *See also State v.*

*McKnight*, 107 Ohio St.3d 101, 2005–Ohio–6046, 837 N.E.2d 315, ¶88. To find an error harmless, an appellate court must be able to declare a belief that the error was harmless beyond a reasonable doubt. *State v. Lytle*, 48 Ohio St.2d 391, 403, 358 N.E.2d 623 (1976).

{¶43} In determining whether an error in the admission of evidence is "harmless",  we  agree with the Supreme Court of Montana that at least three different approaches appear in United States Supreme Court cases: (1) Focusing on the erroneously admitted evidence or other constitutional error to determine whether it might have contributed to the conviction *e. g., Fahy v. Connecticut*  375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171(1963); (2) excluding the constitutional infirmity where overwhelming evidence supports the conviction *e. g., Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1(1972); (3) determining whether the tainted evidence is merely cumulative or duplicates properly admitted evidence *e. g., Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284(1969). *See, State v. McKenzie*, 186 Mont. 481, 533, 186 P.2d 428(1980). These three differing approaches have been noted in Ohio. *See, State v. Rahman,* 23 Ohio St.2d 146, 151, 492 N.E.2d 401(1986)("Upon a thorough review of the record, we simply cannot state in good conscience that the error in the admission of this privileged testimony was either harmless beyond a reasonable doubt, did not have an impact on the jury, or did not contribute to appellant's conviction in any meaningful degree." (Footnote omitted)).

{¶44} In *Fahy v. Connecticut*, the United States Supreme Court held that the erroneous admission of unconstitutionally obtained evidence required reversal, noting that the Supreme Court was "not concerned ... with whether there was sufficient

evidence on which the [defendant] could have been convicted" absent the erroneously admitted evidence, but rather whether there was a "reasonable possibility that the evidence complained of might have contributed to the conviction." 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963).

{¶45} In *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Court rejected the view that all federal constitutional errors in the course of a criminal trial require reversal. The Court held that the Fifth Amendment violation of prosecutorial comment upon the defendant's failure to testify would not require reversal of the conviction if the State could show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Id. at 24, 87 S.Ct. at 828.

{¶46} In *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the Court further explained the harmless error analysis as set forth in *Chapman,*

> Consistent with the jury-trial guarantee, the question it instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand. *See Chapman*, *supra*, 386 U.S., at 24, 87 S.Ct. at 828 (analyzing effect of error on "verdict obtained"). Harmless-error review looks, we have said, to the basis on which "the jury *actually rested* its verdict." *Yates v. Evatt*, 500 U.S. 391, 404, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991) (emphasis added). The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to

the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee.

*Sullivan* at 279, 113 S.Ct. 2078, 124 L.Ed.2d 182. As one Court has explained,

Thus we, as a reviewing court, do not pretend that the constitutional error did not occur and then evaluate how overwhelming the evidence would have been to a hypothetical jury, or even to the jury charged with fairly deciding this case. We do not hypothetically extract the error from the trial which the jury heard; we must, however, consider and weigh the *effect* of the error on the actual jury.

After evaluating the effect of the error in this case, if we find "[u]nder these circumstances" that it is completely impossible for us to say the prosecution has demonstrated, beyond a reasonable doubt, that the trial prosecutor's questioning and comments, and the trial judge's error, did not contribute to Mr. Marshall's conviction, then we cannot find the error harmless. *See Chapman v. California*, *supra* at 26, 87 S.Ct. 824. And if the error is not harmless, then Mr. Marshall is entitled "to a trial free from the pressure of unconstitutional inferences." Id. But if we can find beyond a reasonable doubt that this jury's verdict is surely unattributable to the constitutional error, then the error is harmless and the trial was fair. (Citations omitted).

*State v. Marshall,* 2012-0650, 120 So.3d 922, 929(La.App. 4 Cir. 7/31/13). In *State v. Rahman,* the Ohio Supreme Court recognized this principal,

We are also mindful that our role upon review of this case is not to sit as the supreme trier of fact, but rather to assess the impact of this erroneously admitted testimony on the jury. In writing about the court's function on federal appellate review, Justice John Paul Stevens' observation is particularly appropriate:

"'[I]t is not the appellate court's function to determine guilt or innocence * * *. Nor is it to speculate upon probable reconviction and decide according to how the speculation comes out * * *. [T]he question is, not were [the jury] right in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting.' " *United States v. Hasting* (1983), 461 U.S. 499, 516, 103 S.Ct. 1974, 1984, 76 L.Ed.2d 96, Stevens, J. concurring (*quoting Kotteakos v. United States* [1946], 328 U.S. 750, 763-764, 66 S.Ct. 1239, 1247-1248, 90 L.Ed. 1557).

*State v. Rahman,* 23 Ohio St.3d 146, n. 4, 492 N.E.2d 401. The Ohio Supreme Court has applied this standard of review,

Thus, under Section 2945.83 of the Revised Code it would seem that since there is substantial evidence to support the guilty verdict even after the tainted evidence is cast aside, we should affirm. However, under *Fahy v. State of Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963), and *Chapman v. State of California*, 386 U.S. 18, 87 S.Ct. 824, 17

L.Ed.2d 705 (decided February 20, 1967), we are refused that course of action. In *Fahy*, the court said that when constitutionally inadmissible evidence has been admitted, a reversal is required where 'there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' (Emphasis added.) *In Chapman,* the court made it clear that the *Fahy* rule applied to federal constitutional errors in spite of a state harmless-error statute to the contrary.

*State v. Cowans*, 10 Ohio St.2d 97,104-105, 227 N.E.2d 201(1967).

**{¶47}** In the case at bar, we find beyond a reasonable doubt, that the evidence that Turner was in jail did not contribute to his conviction. In this case, the reference to Turner's incarceration was fleeting and was promptly followed by a curative instruction. *State v. Trimble*, 122 Ohio St.3d 242, 2009-Ohio-2961, 911 N.E.2d 242, ¶175; *State v. Garner,* 74 Ohio St.3d 49, 59, 1995-Ohio-168, 656 N.E.2d 623.

**{¶48}** In *Bruton v. United States*, 391 U.S. 123, 135-136, 88 S.Ct. 1620, 20 L.Ed.2d 476(1968), the United States Supreme Court noted:

* * * Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. "A defendant is entitled to a fair trial but not a perfect one." * * * It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information.

{¶49} Further, "juries are presumed to follow their instructions." *Zafiro v. United States* 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317(1993). "A presumption always exists that the jury has followed the instructions given to it by the trial court." *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313(1990), at paragraph four of the syllabus, rehearing denied, 54 Ohio St.3d 716, 562 N.E.2d 163;

{¶50} Turner has not cited any evidence in the record that the jury failed to follow the trial court's instruction not to consider the evidence concerning his incarceration.

{¶51} Turner's third assignment of error is overruled.

IV.

{¶52} Turner's fourth assignment of error challenges the sufficiency of the evidence. Subsumed within his argument, Turner contends his convictions are against the manifest weight of the evidence produced by the state at trial.

{¶53} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

{¶54} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶55} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

\* \* \*

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**Felonious Assault**

**{¶56}** Turner was convicted of felonious assault under R. C. 2903.11(A)(2). The statute, as applicable here, defines that offense as "(A) No person shall knowingly do either of the following: (2) cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance."

**{¶57}** Turner does not dispute that a knife is a deadly weapon or that Moore was hospitalized as a result of knife puncture wounds she sustained while he was present in her apartment on November 14, 2013. Rather, Turner contends the evidence is insufficient to establish him as the assailant.

**{¶58}** At trial, Moore admitted that she had told Detective Redleski that Turner hit her. (1T. at 144-145). She further admitted that she kicked Turner. (1T. at 148). She admitted that she was wearing a white T-shirt at the time. (1T. at 149). Moore further

admitted that she and Turner conversed after the incident. (1T. at 151). Moore admitted during one conversation about DNA that Turner was concerned with the T-shirt. (1T. at 151). Moore responded, "Well, you took it off me." (Id.)

{¶59} The state presented at trial the prior statements of Moore that it was Turner who stabbed her. The jury also heard the evidence from the responding police officers that Moore, shirtless, was found on the floor of her apartment in a confused, incoherent state with puncture wounds on the upper part of her body. (1T. at 205-206). Turner did not take Moore to the emergency room, leaving her on the floor while he exited the apartment carrying a dog and giving the officers a false name, Michael Taylor. (1T. at 201-202).

{¶60} In addition, the state presented the testimony of the officers that they saw Turner throw Moore's bloodied t-shirt and a paring knife into the neighbor's yard when he exited the apartment. (1T. at 203-204; 222-226).

{¶61} Finally, the state presented the laboratory reports showing that Moore's DNA were on the pants and shirt worn by Turner when he was arrested. (State's Exhibit 19; State's Exhibit 20).

{¶62} We believe that the state presented sufficient evidence from which a jury could conclude beyond a reasonable doubt that Turner committed the offense of felonious assault, and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Turner's conviction.

**Tampering with Evidence**

{¶63} Turner was also charged with tampering with evidence, a violation of R. C. 2921.12(A)(1) which provides:

No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1) Alter, destroy, conceal, or remove any record, documents, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation.

{¶64} Turner argues that he had no reason to believe an investigation was ongoing or likely to be instituted and no evidence he even knew why the officers were at the apartment building. Therefore, his disposing of the bloody T-shirt and paring knife observed by the officers did not meet the elements necessary for a conviction for tampering with evidence.

{¶65} There are three elements of this offense: (1) the knowledge of an official proceeding or investigation in progress or likely to be instituted, (2) the alteration, destruction, concealment, or removal of the potential evidence, (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation. *State v. Straley,* 139 Ohio St.3d 3389, 2014-Ohio-2139, 11 N.E.2d 1175, ¶ 11. In *Straley*, the court concluded,

Because the statute requires that the evidence be related to an ongoing or likely investigation, we hold that a conviction for tampering with evidence pursuant to R.C. 2921.12(A)(1) requires proof that the defendant intended to impair the value or availability of evidence that related to an existing or likely official investigation or proceeding. Likelihood is measured at the time of the act of alleged tampering.

*Straley*, ¶ 19. In *Straley,* the defendant was stopped for erratic driving. The officers decided not to pursue any charges, but would not let the defendant drive herself home. While awaiting permission to drive the defendant home, she excused herself to urinate 20 to 30 feet away to the corner near a building. When one of the officers walked back to the area, he noticed a clear cellophane baggie covered with urine. Inside the baggie there appeared to be crack cocaine. Straley was placed under arrest, and the evidence was collected.

{¶66} The Ohio Supreme Court concluded,

> There is nothing in the record to suggest that the officers were conducting or likely to conduct an investigation into trafficking or possession of cocaine when Straley discarded the baggie. The baggie of cocaine did not relate to either an ongoing investigation of driving while under the influence of alcohol or driving without a license and had no evidentiary value to a likely investigation of public urination, and thus the record does not support a conviction for tampering with evidence.

*Straley,* 139 Ohio St.3d at ¶ 19.

{¶67} In the case at bar, Officers observed Turner disposing of the bloody T-shirt and the paring knife. Turner provides no explanation of his purpose in disposing of these items. Clearly, the items related to the felonious assault of Moore. Equally clear is that Turner intended to impair the value or availability of the evidence that related to the felonious assault of Moore by disposing of them in an adjacent yard. The record is clear that the officers were likely, and in fact did, conduct an investigation into the felonious

assault of Moore upon discovering Moore shirtless on the floor of her apartment in a confused, incoherent state with puncture wounds on the upper part of her body.

**{¶68}** We believe that the state presented sufficient evidence from which a jury could conclude, beyond a reasonable doubt, that Turner committed the offense of tampering with evidence, and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Turner's conviction.

**Manifest weight**

**{¶69}** If the state relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E. 2d 492(1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, *80 Ohio St.3d 89, 684 N.E.2d 668(1997).* "Circumstantial evidence and direct evidence inherently possess the same probative value [.]" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Jenks*, 61 Ohio St.3d at 272, 574 N.E. 2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293(1990), citing *Hurt v. Charles J. Rogers Transp. Co*, 164 Ohio St. 329, 331, 130 N.E.2d 820(1955). Moreover, a series of facts and circumstances can be

employed by a jury as the basis for its ultimate conclusions in a case. *Lott,* 51 Ohio St.3d at 168, 555 N.E.2d 293, citing *Hurt,* 164 Ohio St. at 331, 130 N.E.2d 820.

**{¶70}** As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. See, e.g., *In re Brown*, 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, citing *State v. DeHass*, 10 Ohio St .2d 230, 227 N.E.2d 212(1967).

**{¶71}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635,

¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

{¶72} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

{¶73} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).

Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, supra.

**{¶74}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Turner of the charges.

**{¶75}** Based upon the foregoing and the entire record in this matter, we find Turner's convictions were not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony of the state's witnesses. This court will not disturb the jury's finding so long as competent evidence was present to support it. *State v. Walke*r, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Turner's guilt.

**{¶76}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of both crimes beyond a reasonable doubt.

{¶77} Turner's fourth assignment of error is overruled.

{¶78} The judgment of the Court of Common Pleas, Stark County, Ohio is affirmed.

By Gwin, P.J.,

Wise, J., and

Baldwin, J., concur