[Cite as *State v. Spangler*, 2017-Ohio-268.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 16-CA-12 |
| | : | |
| JAYMZ O. SPANGLER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Fairfield County
                            Municipal Court, Case No. CRB
                            1502114


JUDGMENT:                   AFFIRMED


DATE OF JUDGMENT ENTRY:     January 24, 2017


APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

RANDAL ULLON                            THOMAS R. ELWING
CITY OF LANCASTER LAW                   60 West Columbus St.
DIRECTOR                                Pickerington, OH 43147

DANIEL E. COGLEY
136 W. Main St.
Lancaster, OH 43130

*Delaney, J.*

{¶1} Defendant-Appellant Jaymz O. Spangler appeals his conviction for endangering children in violation of R.C. 2919.22(B)(1), a first-degree misdemeanor, in the Fairfield County Municipal Court. Plaintiff-Appellee is the State of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2} On September 8, 2015, criminal complaints were filed with the Fairfield County Municipal Court charging Defendant-Appellant Jaymz O. Spangler with one count of endangering children, a first-degree misdemeanor in violation of R.C. 2919.22(A), and one count of endangering children, a first-degree misdemeanor in violation of R.C. 2919.22(B)(1). Spangler appeared in court and entered a plea of not guilty. The matter was set for a jury trial on March 8, 2016.

{¶3} At trial, the State elected to proceed on only the complaint charging Spangler with a violation of R.C. 2919.22(B)(1), alleging Spangler "did abuse M.S., a child when said child is under eighteen or is a physically or mentally handicapped child under twenty-one, * * *." The following facts were adduced at trial.

### The Initiating Event

{¶4} Spangler is married to Mother, the biological mother of M.S. On July 5, 2015, M.S. was one-year-old.

{¶5} On July 5, 2015, Spangler brought M.S. from their home to Mother, who was at a neighbor's house. The neighbor was holding M.S. when she noticed bruising on the child. The neighbor encouraged Mother to take the child to the hospital.

**Officer Malone's Testimony**

{¶6}   The Lancaster Police Department received a call from the Fairfield Medical Center on July 5, 2015 about a possible child abuse. Patrol Officer Brian Malone was dispatched to the hospital. At the hospital, Officer Malone spoke with Mother. Spangler did not accompany Mother to the hospital. Officer Malone observed injuries on the child, including bruising and scratch marks on the child's buttocks and on the right side of her face and forehead.

{¶7}   Officer Malone then spoke with Spangler about the child's injuries. Spangler, Mother, and M.S. share a bedroom. Spangler told the officer that he was asleep and woke up. He left the room, came back in, and M.S. fell off the bed. He picked her up and brought her to Mother because he felt M.S. was acting really weird. Spangler did not notice any bruising on the child.

{¶8}   Officer Malone completed his report and listed R.H. as a suspect. Based on the information provided by Mother and Spangler, R.H. was the only person believed to be alone with the child.

{¶9}   On July 7, 2015, Officer Malone came in contact with R.H. during a traffic stop. R.H. was identified as the driver of the vehicle. Because Officer Malone happened to run into R.H., he asked him about the incident. R.H. told Officer Malone he didn't notice any bruising on the child. He stated that Mother left M.S. with him for approximately thirty to sixty minutes on July 4, 2015.

**R.H.'s Testimony**

{¶10} R.H. was staying at the residence of Spangler and Mother on July 4 and 5, 2015. R.H. and Mother had a previous relationship. R.H. testified that while he was

staying with Spangler and Mother, other people were living there, including Spangler's sister and two other individuals.

{¶11} On July 4, 2015, R.H. testified Mother and Spangler took M.S. to see the fireworks. When they returned, Mother told R.H. that M.S. was running a fever. She asked R.H. for his advice on how to treat the fever because R.H. had a child. He recommended they wrap her in a blanket and give her water to let her sweat the fever out. He testified M.S. did not wake up until 12:00 or 12:30 p.m. on July 5, 2015.

{¶12} R.H. observed that M.S. slept in the bedroom with Spangler and Mother. On July 5, 2015, R.H. left the residence at around 8:00 a.m. to go fishing and returned around 12:00 p.m. R.H. said Mother left the residence around 3:30 p.m. R.H. was in the living room. At 4:00 p.m., R.H. heard M.S. screaming in the bedroom. Spangler was in the bedroom and the door was shut. He heard Spangler scream at the child, "Shut the fuck up, little whiny bitch." R.H. next heard Spangler smack M.S. at least three to six times. He said M.S. stopped crying after the third smack. R.H. paced in the living room and saw Spangler leave the bedroom and walk out of the residence. Spangler did not have M.S. with him and Spangler did not speak to R.H. when he left. R.H. left the residence, told a neighbor to tell Mother that he left, and walked to a friend's home forty-five minutes away.

### Dr. Creighton's Testimony

{¶13} M.S. was admitted to Nationwide Children's Hospital in July 2015. Trauma surgery service consulted Dr. Kristen Creighton, a child abuse pediatrician, to evaluate M.S. for concerns of non-accidental trauma.

{¶14} Based on Dr. Creighton's evaluation, she determined M.S.'s injuries were caused by abusive trauma. M.S. had lineal parallel bruising to both sides of her face and buttocks. The lineal parallel bruising was consistent with a slap mark.

**Detective Underwood's Testimony**

{¶15} Detective Underwood of the Lancaster Police Department was assigned to the case. He interviewed Spangler and Mother on July 15, 2015. Spangler told Detective Underwood that he did not notice any bruising on M.S. On July 5, 2015, Spangler and M.S. were asleep in the bedroom. Around 4:00 p.m., M.S. woke up screaming. Spangler told Detective Underwood he picked her up off the floor and he dropped her, approximately six to eight inches off the ground. Spangler then took M.S. to Mother, who was at the neighbor's. Detective Underwood asked Spangler who caused the bruising and Spangler named R.H., who he said was alone with the child for 45 minutes on July 4, 2015.

**Mother and the Fifth Amendment**

{¶16} Prior to the start of trial, the State informed the trial court that it intended to call Mother as a witness and she might try to raise the Fifth Amendment. If Mother refused to testify based on the Fifth Amendment, the State would make a written request to have a common pleas judge grant her immunity and compel her testimony.

{¶17} The State called Mother to the stand. The trial court excused the jury. Mother immediately invoked her Fifth Amendment privilege. The trial court swore Mother in and informed her of her rights to counsel and to invoke the Fifth Amendment. Mother stated she understood her rights and the State continued:

I mean, I guess I won't know until we get to the area where she wants to invoke it. * * * Cause I'm not sure if she wants to invoke it if that actually applies (inaudible.)

Court: Right. Because it doesn't apply to everything, okay? There are certain general questions that can be asked that don't violate your rights, however, there are certain areas, and she doesn't have counsel with her, so I guess as the Court I will intercede? Or does counsel wish to enter objections at that time?

{¶18} The trial court found that Mother was invoking her Fifth Amendment right and was not going to testify that day. The judge called a recess so the State could seek immunity for Mother and compel her testimony.

{¶19} The jury trial reconvened on March 9, 2016. Before the jury was brought to the courtroom, the trial court heard the matter of Mother's testimony. Present in the courtroom were the parties and Mother's appointed counsel. The State told the trial court it would not call Mother as a witness, but the defense stated it intended to call Mother as a witness on behalf of Spangler. Counsel for Spangler stated that because he knew Mother was going to invoke the Fifth Amendment, he agreed not to question her regarding the events on July 4 or 5, 2015. He would, however, ask her questions about her mental health issues:

The relevance, your Honor, we would ask that, uh, it certainly gives open the possible, some of the, I'll just put, be blunt. Some of the issues that we feel that she would testify to is that she does blackout, uh, when she gets irritated or crying. The baby irritates her, uh, she suffered from postpartum

depression, uh, she doesn't have a connection to this child. She's very detached from this child, uh, and I think that the jury can draw conclusions from that. My understanding was that [Mother] was willing to admit to those aspects without, uh, indicating that in fact she believes she did anything.

The Court: But with the inference that she did do something, by her testimony?

The Defense: That would be the inference the defense would ask the jury to draw, correct.

* * *

{¶20} The State responded to the defense's intended line of questioning:

I mean, I think, based on those, on the sense that by her own, the defense's own admission, they're hoping that they get testimony that would actually infer her and incriminate herself and inferences reasonably drawn that would incriminate her and that's the whole purpose of the defense putting her on the stand in front of the jury is so that they can infer that she's the one who actually committed the crime and that's the whole purpose of her invoking her right against self-incrimination, your Honor. I believe defense counsel will state that she (inaudible) testify at all and wants to revoke.

{¶21} Mother's appointed counsel informed the trial court that Mother would not testify on any matters other than her name and address. Her counsel believed that even if the issues were not directly related to the events on July 4 or 5, inferences could be drawn that would incriminate her, so she would be exercising her Fifth Amendment right under any circumstances.

{¶22} The trial court ruled that based on her counsel's indication that Mother would invoke her Fifth Amendment right to all questions, he would not allow her to take the stand.

{¶23} Upon the defense's request, the trial court included a jury instruction ordering the jurors to make no inference as to why or why not a party had not been called as a witness.

**The Conviction**

{¶24} On March 9, 2016, the jury found Spangler guilty of endangering children, in violation of R.C. 2919.22(B)(1). The trial court sentenced Spangler to 180 days in jail with 90 days suspended, two years of community control sanctions, and imposed a $200.00 fine via a sentencing entry filed on March 28, 2016.

{¶25} It is from this judgment Spangler now appeals.

**ASSIGNMENT OF ERROR**

{¶26} Spangler raises one Assignment of Error:

{¶27} "THE TRIAL COURT ERRED IN PREVENTING APPELLANT FROM CALLING [MOTHER] AS A WITNESS IN VIOLATION OF APPELLANT'S RIGHTS TO COMPULSORY PROCESS AND DUE PROCESS OF LAW UNDER BOTH OHIO AND UNITED STATES CONSTITUTIONS."

**ANALYSIS**

{¶28} Spangler argues in his sole Assignment of Error that the trial court erred by ruling Mother was not required to testify as a defense witness because she could potentially incriminate herself. We disagree.

{¶29} The Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution declare that no person shall be compelled in any criminal case to be a witness against himself. *State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, 62 N.E.3d 153, ¶ 30.

{¶30} The Ohio Supreme Court has held that when a witness asserts a privilege against self-incrimination, a court may not rely upon the witness's claim alone, but has a duty to determine whether the witness's refusal to answer is justified. *State v. Arnold*, 2016-Ohio-1595, ¶ 45 citing *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). The trial judge must determine if a proposed witness's testimony would be self-incriminating. *Id.*; *State v. Landrum*, 53 Ohio St.3d 107, 120-121, 559 N.E.2d 710 (1990); *McGorray v. Sutter*, 80 Ohio St. 400, 89 N.E. 10 (1909), paragraph two of the syllabus. A valid assertion exists where a witness has reasonable cause to apprehend a real danger of incrimination. *United States v. Apfelbaum*, 445 U.S. 115, 127, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980); *In re Morganroth*, 718 F.2d 161, 167 (C.A.6 1983); *State v. Linkous*, 4th Dist. Scioto No. 12CA3517, 2013-Ohio-5853, ¶ 55. "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer * * * might be dangerous because injurious disclosure could result. * * *." *Hoffman*, 341 U.S. at 486-487. The privilege extends to answers which would furnish a link in the chain of evidence, exposing the witness to criminal liability. *Id.* at 486; *Blau v. United States*, 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 70 (1950); *State v. Landrum*, 53 Ohio St.3d at 120-121.

{¶31} The Ohio Supreme Court recently stated in *State v. Arnold* that the "trial court's inquiry into the basis of a witness's assertion of the privilege is critical, even when

the purported basis seems implausible, frivolous, or suspect. The trial court must tread lightly, of course, because 'if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee.' *Hoffman*, 341 U.S. at 486, 71 S.Ct. 814, 95 L.Ed. 1118. Thus, the trial court 'must carefully balance the interests of the party claiming protection against self-incrimination and the adversary's entitlement to equitable treatment' in its analysis of the propriety of the claim. *Sec. & Exchange Comm. v. Graystone Nash, Inc.* 25 F.3d 187, 192 (3d Cir.1994). And the record of the trial court's proceedings should clearly reflect the court's inquiries into the bases of the claim of privilege and the proponent's responses." *State v. Arnold*, 2016-Ohio-1595, ¶ 47.

{¶32} In *State v. Turner*, this court outlined the extent and type of inquiry the trial court must conduct as stated in *McGorray v. Sutter*, 80 Ohio St. 400, 411, 89 N.E. 10:

> Certainly, the modes of inquiry to which the trial judge may resort to ascertain that the claim of the witness is not well founded must not invade his immunity. He must not extort from the witness a statement which would be a plenary confession of guilt, or the statement of a circumstance which in connection with other circumstances would establish his guilt. But if, in any mode consistent with the immunity, he may acquire the basis of a clear conviction that the claim of the witness is ill founded, he may require him to answer.

2014-Ohio-4678, ¶ 33.

{¶33} If the court determines that a witness is mistaken about the danger of incrimination, the court must then require the witness to answer the question. *Hoffman*, 341 U.S. at 486. When the court is satisfied that the witness's refusal to answer is justified, a court may either excuse the witness from testifying or, upon the written request of the prosecuting attorney, may compel the witness to answer by granting that person immunity from prosecution for any criminal act about which the person may testify. *State v. Turner*, 2014-Ohio-4678, ¶ 32, 34.

{¶34} In the case at bar, the transcript shows that when called to the stand as the State's witness, Mother immediately invoked her Fifth Amendment privilege. The trial court informed Mother of her rights and told her that not every question asked of her could violate her right against self-incrimination. The trial court recessed the trial for the day to allow the State to seek immunity and compel her testimony.

{¶35} When the trial reconvened the next day, Mother was represented by appointed counsel. The State informed the trial court it was not going to call Mother as a witness. Defense counsel stated he intended to call Mother as a witness. Counsel elaborated that he would not ask Mother about the events of July 4 and 5, but would instead inquire as to Mother's mental health issues and how they related to her relationship with her child. Counsel stated the intention was to have the jury draw the inference that Mother did something to the child. Mother's appointed counsel spoke on Mother's behalf:

> I spoke with my client about this quite extensively. It is her intention not to
> testify at all on any matters other than her name and address if she is forced
> to. I believe that even if the issues were not directly related to the situation

at hand, cross-examination or other questions, inferences could be drawn that would incriminate her, so she will be, uh, exercising her rights under the Fifth Amendment under any questioning.

{¶36} Upon this record, we find the trial court conducted a sufficient inquiry to determine the information the defense sought to elicit from Mother would violate Mother's right to self-incrimination. Defense counsel outlined his line of questioning to the trial court and the intended impact of the questions upon the jury. While Mother herself was not directly subject to the trial court's inquiry, Mother's interests were represented by her appointed counsel. The implications of the defense counsel's questions about Mother's mental health issues and how they related to her alleged poor relationship with her child could incriminate Mother or furnish proof of an element or link in the chain of evidence necessary to convict Mother of a crime. The record in this case supports the trial court's determination that Mother's refusal to answer was justified.

{¶37} Our decision is further supported by the Ohio Supreme Court's opinion in *State v. Kirk*, 72 Ohio St.3d 564, 651 N.E.2d 981 (1995). In *Kirk*, the defendant wanted to call a witness as part of his defense even though the witness made it clear to the court and to counsel that the witness would claim Fifth Amendment protection. The trial court excused the witness from answering a subpoena and the defendant appealed. The Supreme Court of Ohio found no error in the trial court's refusal to permit the defendant to call the witness. The *Kirk* court held:

A trial court may exclude a person from appearing as a witness on behalf of a criminal defendant at trial if the court determines that the witness will not offer any testimony, but merely intends to assert the Fifth Amendment

privilege against self-incrimination. (*Columbus v. Cooper* [1990], 49 Ohio

St.3d 42, 550 N.E.2d 937, distinguished and limited.)

*Kirk*, paragraph one of syllabus.

{¶38} The trial court in this case further followed the holding in *Kirk* by providing a jury instruction that the jury should draw no inference from the absence of the witness because the witness was not available to either side. *Kirk*, paragraph two of syllabus.

{¶39} We conclude the trial court was justified in finding that Mother was faced with some authentic, objectively reasonable danger of incrimination. Upon so finding, the trial court properly excluded Mother from appearing as a witness on behalf of the defense because Mother was not going to offer any testimony, but merely intended to assert the Fifth Amendment privilege.

{¶40} Spangler's sole Assignment of Error is overruled.

## CONCLUSION

{¶41} The judgment of the Fairfield County Municipal Court is affirmed.

By: Delaney, J.,

Farmer, P.J. and

Hoffman, J., concur.