[Cite as *State v. Smith*, 2017-Ohio-7740.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 16AP-772 |
| v. | : | (C.P.C. No. 15CR-4092) |
| James E. Smith, Jr., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

### D E C I S I O N

### Rendered on September 21, 2017

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee. **Argued:** *Barbara A. Farnbacher*.

**On brief:** *Dennis W. McNamara*, for appellant. **Argued:** *Dennis W. McNamara*.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendant-appellant, James E. Smith, Jr., appeals from the judgment entry of the Franklin County Court of Common Pleas finding appellant guilty of two counts of possession of cocaine and two counts of trafficking in cocaine. For the following reasons, we affirm the decision of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On August 21, 2015, a Franklin County Grand Jury indicted appellant on two counts of possession of cocaine, in violation of R.C. 2925.11, and two counts of trafficking in cocaine, in violation of R.C. 2925.03. All four counts charged that the amount of cocaine was equal to or greater than 100 grams, elevating those counts to first-

degree felonies.  Appellant did not file a pre-trial affidavit of indigence.  On August 26, 2015, represented by counsel, appellant pled not guilty to all counts.  Appellant posted a $100,000 surety or appearance bond, and the case proceeded to a jury trial beginning on October 11, 2016, where the following pertinent facts were presented.

{¶ 3}  On August 11, 2015, law enforcement officials were notified of a FedEx package that possibly contained a controlled substance.  The package was addressed to "Jesica Aviles" at 921 Chittenden Avenue in Columbus from a sender located on Veronica Drive in Coachella, California; the FedEx tracking number indicated that the package was shipped from a Kinko's in LaQuinta, California.  Within the FedEx package, officers found six kilos of cocaine encased within a karaoke machine.  The officers placed one package of cocaine, several packages of fake cocaine, and a GPS transmitter and another electronic device back into the karaoke machine, resealed the karaoke machine in the FedEx box, and obtained authorization to conduct a controlled delivery of the package to the Chittenden Avenue residence.

{¶ 4}  The next day, a special agent for a drug traffic force, posing as a FedEx delivery person and equipped with electronic recording devices, approached the Chittenden Avenue residence.  Surveillance and tactical teams positioned nearby the home monitored the delivery.  Three men unknown to the special agent were on the front porch to the home: appellant, George Spencer, and Mark Chafin.  The special agent stated that he had a package for "Jesica," and appellant responded, "Yeah, yeah."  (Tr. Vol. I at 86.)  Appellant told the agent his name was Burt Johnson and was a resident of the house, signed for the package, and indicated that he did not think the box needed to be signed for.  A later search of the home produced no evidence indicating that appellant actually lived there; rather, evidence showed Spencer's girlfriend, whose last name is not Aviles, rented the home and lived there with her child.  The special agent told appellant that the package could be stolen if left on the front porch, and appellant moved the package from the porch to inside the doorway of the house.  The special agent left the property.  The electronic recording of the delivery was played for the jury.

{¶ 5}  A few minutes after the controlled delivery, Chafin removed the FedEx box from the home, placed it into the backseat of a Mercury Sable, and returned to the porch.  The Sable is titled to TSF Investment Company, LLC, a company for which appellant is

the CEO.  Shortly thereafter, appellant and Chafin got into the Sable.  Appellant drove the Sable down Chittenden Avenue with Chafin in the front passenger seat.  Approximately seven to ten minutes elapsed from the time the special agent arrived with the FedEx truck to the time the Sable drove away.

{¶ 6}  Uniformed detectives stopped the Sable at the end of the street.  Officers found the unopened FedEx package sitting on the back seat of the Sable behind the passenger seat.  Officers seized $1,014 in cash and three cell phones from appellant's person.  During inventory of the Sable, officers recovered from the trunk a second, virtually identical karaoke machine containing an additional six kilos of cocaine.  Testimony conflicted as to whether the karaoke machine in the truck was found within a FedEx package.  No fingerprints matching appellant or Chafin were found on the karaoke machine recovered from the truck.

{¶ 7}  Eight days later, pursuant to a warrant, officers searched a business owned by appellant named "The Speed Factory" located at 4555 Groves Road, Unit 35, in Columbus.  The officers did not find controlled substances, large amounts of money, or valuables such as jewelry.  The officers seized, among other items, a cell phone from the garage area and a cell phone from a bag hanging on a coat rack.

{¶ 8}  An expert in mobile device forensics testified to analyzing the five cell phones recovered: the Nokia found in a bag on the coat rack of appellant's business; the Samsung M260 recovered in the garage area of appellant's business, and two LG phones and a Samsung Galaxy recovered from appellant's person.  One of the LG phones found on appellant contained records of calls to the same southern California number at least 11 times from August 4 to August 12, 2015.  Text messages recovered from the phones found on appellant contained tracking numbers that matched the FedEx records of other packages sent between Columbus and California.  At least one of those phones had accessed FedEx.com to track three packages between Columbus and California.  Screenshots of texts from the Nokia phone taken from the coat rack of appellant's business included California addresses related to locations of five other FedEx packages shipped between Columbus and California coupled with texts relaying the Chittenden Avenue address.

{¶ 9} According to testimony from the officers involved, narcotics smugglers seldom ship drugs to their own residence but rather typically ship drugs to another residence with a fictitious name listed; likewise, the sender information listed on such a package is fictitious in a high percentage of cases.

{¶ 10} Sometime later but before trial, Chafin allegedly executed an affidavit stating he placed both boxes in the Sable, believed the boxes contained auto parts, and that appellant did not know anything about the boxes. The affidavit is not a part of the record of appeal. At trial, appellant attempted to call Chafin to testify as a defense witness and enter Chafin's affidavit into evidence. A discussion out of the jury's presence occurred whereby counsel for Chafin stated that he had advised Chafin to assert his right against self-incrimination under the Fifth Amendment to the U.S. Constitution. The trial court agreed that taking the stand posed a genuine risk to Chafin's Fifth Amendment rights, noting that by carrying the box to the car Chafin arguably held equal possession of the narcotics. The trial court stated that, procedurally, "I am not going to do this question by question. It's my opinion that once he decides to take the Fifth, he takes the Fifth. It's not a smorgasbord event." (Tr. Vol. III at 411-12.) Defense counsel recognized that there could be a Fifth Amendment issue but objected to not being able to ask him multiple questions and mentioned that he would like to question Chafin about whether officers threatened him to not testify, and whether that had an impact on his decision to invoke the Fifth Amendment. Defense counsel did not proffer for the record questions that he would have asked Chafin.[1]

{¶ 11} The jury then returned, and defense counsel called Chafin to the stand. After being sworn in, Chafin provided identifying information. Defense counsel then handed Chafin his affidavit and asked whether he recognized it. Acting on his own counsel's advice, Chafin invoked his right against self-incrimination under the Fifth Amendment. Chafin further indicated that at his counsel's instruction, he would "plead the fifth" in response to any question. Counsel for Chafin confirmed that he advised Chafin to invoke the Fifth Amendment in response to any further questioning. The trial court noted defense counsel's objection and instructed the jury not to draw any inference

---

[1] When asked about this at oral argument, counsel for appellant stated that he did not proffer the questions he would have asked and that the record only shows such questions by inference.

either for or against appellant on the basis of Chafin's failure to testify. On the objection of plaintiff-appellee, State of Ohio, the trial court did not admit Chafin's affidavit into evidence on the basis that appellant was an unavailable witness, and the affidavit did not fall within any exception in Evid.R. 804(B). Appellant did not testify in his own defense or call any other witness.

{¶ 12} On October 13, 2016, the jury returned verdicts finding appellant guilty of all counts. Several weeks later, appellant filed an affidavit, pursuant to R.C. 2929.18(B)(1), setting forth his indigence.

{¶ 13} The trial court conducted a sentencing hearing on November 2, 2016, whereby it merged Count 1 with Count 2, merged Count 3 with Count 4, and imposed a sentence of 11 years each as to Counts 2 and 4 to be served concurrent with each other. Regarding a fine, appellant reminded the trial court of the affidavit of indigence filed, pursuant to R.C. 2929.18(B)(1), and asserted that while he may have enough money to cover the $1,000 court costs, he had no ability to pay a mandatory fine of $10,000 considering he will be incarcerated and have no income. Nevertheless, the trial court imposed a mandatory fine of $10,000 on each of the two counts and deferred collection of the fine and costs until appellant is released from prison. Appellant again pointed out the affidavit of indigence, and the trial court responded "I know, and I'm not making that finding at this time." (Sentencing Hearing Tr. at 16.) Appellant asked whether the trial court is making a finding that appellant is not indigent, and the trial court responded "[u]nless [appellee]'s stipulating that he is. I mean, he can pay something." (Sentencing Hearing Tr. at 17.) Thereafter, the following exchange occurred:

> [Appellee:] In all honesty to the Court, Judge, if I have to give an answer, his jail calls a couple days ago when he was talking about an appeals bond, he has a million dollars worth of property.
>
> [Appellant:] According to the county, he owns no property, no real estate. Anyway.
>
> [Trial Court:] He made the bond on this thing. I think there's plenty of evidence. I'm not going to find him indigent, and obviously you can take that to the court of appeals as well.

(Sentencing Hearing Tr. at 17-18.)

{¶ 14} The judgment entry of the trial court addresses the fine as follows:

The Court has considered [appellant's] present and future ability to pay a fine and financial sanction and does, pursuant to R.C. 2929.18, hereby render judgment for the following fine and/or financial sanctions: **The Court imposed a mandatory fine in the amount of $10,000.00 EACH on Counts Two and Four. Defendant shall pay court costs in an amount to be determined. Fines and costs shall be deferred while [appellant] is incarcerated.**

The total fine and financial sanction is **$20,000.00** plus costs.

(Emphasis sic.) (Jgmt. Entry at 2.)

{¶ 15} Appellant filed a timely appeal to this court.

## II. ASSIGNMENTS OF ERROR

{¶ 16} Appellant presents three assignments of error:

[1.] THE TRIAL COURT ERRED WHEN IT PERMITTED MARK CHAFIN TO INVOKE HIS RIGHT AGAIN(sic) SELF INCRIMINATION AND DID NOT ORDER HIM TO TESTIFY.

[2.] THE TRIAL COURT ERRED WHEN IT EXCLUDED THE AFFIDAVIT OF MARK CHAFIN.

[3.] THE TRIAL COURT ERRED WHEN IT IMPOSED A FINE IN THE AMOUNT OF TWENTY THOUSAND DOLLARS.

## III. DISCUSSION

### A. First Assignment of Error

{¶ 17} Under the first assignment of error, appellant contends that the trial court erred in permitting Chafin to invoke his right against self-incrimination and not ordering him to testify. We disagree on this record.

{¶ 18} "The Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution declare that no person shall be compelled in any criminal case to be a witness against himself." *State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, ¶ 30. "[T]he privilege against self-incrimination is accorded liberal construction in favor of the right it was intended to secure." *Id.* at ¶ 31. It applies with

equal force to "witnesses who would incriminate themselves by giving responses to questions posed to them." *Id.*

{¶ 19} The right to invoke the Fifth Amendment right against self-incrimination is not absolute. *Id.* at ¶ 43. The bare assertion of the Fifth Amendment privilege does not provide automatic justification for a witness to refuse to testify. *Id.* at ¶ 45-46. Rather, the witness claiming the privilege must assert a basis for asserting the privilege. *Id.* at ¶ 44. Such burden is "not an onerous one." *Id.* At minimum, "the proponent must establish that he or she is faced with some authentic, objectively reasonable danger of incrimination." *Id.*, citing *Hoffman v. United States*, 341 U.S. 479, 486-87 (1951). The danger of incrimination exists where a witness's answers "may reasonably have a tendency either to incriminate the witness or to furnish proof of an element or link in the chain of evidence necessary to convict the witness of a crime." *Arnold* at ¶ 45.

{¶ 20} Generally, a witness must assert the Fifth Amendment privilege against self-incrimination on a question-by-question basis. *Vega v. Tivurcio*, 10th Dist. No. 14AP-327, 2014-Ohio-4588, ¶ 12, *appeal not accepted*, 142 Ohio St.3d 1422, 2015-Ohio-1353. *See Arnold* at ¶ 44, citing *In re Morganroth*, 718 F.2d 161 (6th Cir.1983). However, "[a] trial court may exclude a person from appearing as a witness on behalf of a criminal defendant at trial if the court determines that the witness will not offer any testimony, but merely intends to assert the Fifth Amendment privilege against self-incrimination." *State v. Kirk*, 72 Ohio St.3d 564 (1995), paragraph one of the syllabus.

{¶ 21} Ultimately, it is the duty of the trial court to inquire into the witness's basis for asserting the privilege and to determine whether the witness's silence is justified. *Arnold* at ¶ 46. The court in *Arnold* cautioned that in making such a determination, the trial court must "tread lightly" in order to protect the witness from surrendering the protection of the privilege in the process. *Id.* at ¶ 47. *Arnold* recognizes that a trial court should require a witness to answer questions only if " 'it clearly appears to the court that [the proponent of the privilege] is mistaken.' " *Id.* at ¶ 45, quoting *Hoffman* at 486.

{¶ 22} Furthermore, if a trial court commits error in failing to sufficiently delve into a witness's purported fear of incrimination, an appellate court must still affirm the trial court's judgment if the state proves beyond a reasonable doubt that the trial court's inquiry was harmless. *Arnold* at ¶ 49. In criminal cases, the harmless error standard

requires that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A). Generally, for an error to affect substantial rights, the defendant must have suffered prejudice. *Id.* at ¶ 50.

{¶ 23} In this case, appellant first argues that the trial court erred procedurally because, under *Arnold*, the trial court must assess, on a question-by-question basis, whether the witness has a real and substantial basis for concluding each of his answers will incriminate him. Second, appellant argues the trial court erred substantively in finding that Chafin's purported testimony would have incriminated him since, based on the affidavit, Chafin would likely have said he did not know the boxes he placed in the car contained cocaine, and regarding questioning Chafin about police threats, Chafin's answers to this line of questioning would not have created a substantial and real threat for which he could be prosecuted. Finally, appellant argues that the trial court's wrongful exclusion of Chafin's testimony was not harmless beyond a reasonable doubt, as "[t]he purported testimony of Chafin (as set forth in his affidavit) would have exculpated Appellant" by negating the "knowingly" element of each crime charged. (Appellant's Brief at 9, 17.)

{¶ 24} Appellee responds that the trial court was permitted to allow Chafin to not testify, pursuant to *Kirk* at 569, as Chafin indicated he would not offer any testimony but would rather assert the Fifth Amendment in response to any further questioning and that the trial court in this case considered much more than Chafin's bare assertion of the privilege in determining his invocation of the privilege to be genuine.

{¶ 25} As a preliminary issue, we must decide whether we may determine appellant's assignment of error based on the record before us. Pursuant to App.R. 12(A)(1)(b), this court is limited to determining an appeal based on the record as provided in App.R. 9. As set forth in *State v. Newman*, 6th Dist. No. E-11-065, 2013-Ohio-414, ¶ 7-8, *appeal not accepted*, 135 Ohio St.3d 1471, 2013-Ohio-2512:

> Although it is the duty of all of the participants during trial to ensure that a proper appellate record is being created, Crim.R. 22 and *State v. Lewis*, 2d Dist. No. 23850, 2011 Ohio 1411, ¶ 28, ultimately appellant bears the duty to demonstrate where error occurs on the record. App.R. 9(B) and *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 6, quoting *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-

2761, 789 N.E.2d 222, ¶ 7. Without a complete record, the appellate court must presume the regularity of the proceedings and the validity of the judgment. *State ex rel. Hoag v. Lucas Cty. Bd. of Elections*, 125 Ohio St.3d 49, 2010-Ohio-1629, 925 N.E.2d 984, ¶ 12, and *State v. Prince*, 71 Ohio App.3d 694, 698, 595 N.E.2d 376 (4th Dist.1991), citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980).

If an appealable issue arises during trial, appellant has a duty to proffer contrary evidence in order for the appellate court to have a record to review the issue. Evid.R. 103(A)(2) and *State v. Chapin*, 67 Ohio St.2d 437, 444, 424 N.E.2d 317 (1981). Correspondingly, appellant has a duty to ensure that all of the evidence considered by the court is entered into the record and transmitted to the court of appeals or to take action to correct or supplement the record pursuant to App.R. 9 if there is an error or omission. *State v. Tyler*, 50 Ohio St.3d 24, 41, 553 N.E.2d 576 (1990), superseded by constitutional amendment in part on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 103, 1997-Ohio-355, 684 N.E.2d 668 (1997), fn. 4 and *Maseck v. Lindav Properties*, 1st Dist. No. C-050528, 2006-Ohio-3721, ¶ 11. Otherwise, the appellate court must find that appellant waived any error that might have been reflected in the omitted record. *Smith* at 41. Compare *In re Holmes*, 104 Ohio St.3d 664, 2004-Ohio-7109, 821 N.E.2d 568, ¶ 19-20 (appellant does not waive any error if the omission in the record is due to the error of the court personnel and not appellant).

Likewise, "[a]n offer of proof is necessary to preserve procedural errors in the invocation of [] witnesses' Fifth Amendment privilege." *State v. Wilson*, 3d Dist. No. 14-06-19, 2006-Ohio-6930, ¶ 34, *appeal not allowed*, 115 Ohio St.3d 1413, 2007-Ohio-4884.

{¶ 26} In this case, although the record contains some discussion alluding to the substance of Chafin's affidavit, the affidavit is not present in the record on appeal. Likewise, appellant concedes that he did not proffer to the trial court questions that he would have asked Chafin. As a result, appellant waived error relating to the trial court's decision to allow Chafin not to testify. *Newman*; *Wilson* at ¶ 33 (finding that a defendant waived any error in the trial court's decision to permit a witness to make a "blanket invocation" of his Fifth Amendment privilege by failing to proffer expected testimony to the trial court). Moreover, without the affidavit and a record of what questions appellant

would have asked Chafin, we cannot say that appellant has met his burden of demonstrating error on appeal. *State v. Sims*, 10th Dist. No. 14AP-1025, 2016-Ohio-4763, ¶ 11, citing App.R. 16(A)(7).

{¶ 27} Regardless, even considering pieces of information describing the affidavit and assuming defense counsel's questions based thereon, we disagree with the merits of appellant's arguments. First, *Arnold* does not directly address the procedural issue raised by appellant here. As a case considering a witness's response to a particular question, *Arnold* does not address the issue of whether a witness who unequivocally states to the court that he will assert his right against self-incrimination for all further questions must actually remain on the stand and repeatedly assert that right. We note that *Arnold* makes no reference to *Kirk*.

{¶ 28} Second, *Arnold* is distinguishable factually in that it involved assertion of the privilege by the victim, who was also the defendant's father, and involved a record completely devoid of any risk of incrimination to that victim. In this case, the facts surrounding Chafin—as the person who placed a FedEx box containing six kilos of cocaine into a car and then riding as a passenger in that car—clearly provide a heavy risk of incrimination to Chafin.

{¶ 29} Rather, we find this case more factually in line with the post-*Arnold* case, *State v. Spangler*, 5th Dist. No. 16-CA-12, 2017-Ohio-268. In *Spangler*, the state brought an endangering children charge against the father of a young child. Defense counsel for the father-defendant sought to call the mother, who was allegedly present in the room during the incident but not charged with a crime, to testify. Defense counsel indicated that he would not ask about events the day the alleged crime occurred but would ask her about her mental health. Appointed counsel representing the mother spoke on her behalf and relayed her intention not to testify at all on any matters other than her name and address. The trial court determined that the mother's decision to not testify was justified. On appeal, the Fifth District found that the trial court conducted a sufficient inquiry under *Arnold*, noting that the mother was represented by counsel and that the implications of the line of inquiry could incriminate the mother. The *Spangler* court also found support for its decision in the Supreme Court of Ohio's opinion in *Kirk*, which held that a trial court did not err in refusing to permit the defendant to call a witness where

that witness had made it clear to the court and to counsel that the witness would claim Fifth Amendment protection.

{¶ 30} Like in *Spangler*, in this case, Chafin was represented by counsel and unequivocally told the trial court that he would assert his Fifth Amendment right against self-incrimination in order to not answer any questions beyond his name and address. Furthermore, the trial court considered the record of this particular case to conclude that Chafin had a genuine risk to his Fifth Amendment rights. Defense counsel acknowledged that a Fifth Amendment issue could occur. Therefore, on this record, we find that even if appellant did not waive his arguments by failing to preserve an adequate record, he has not demonstrated that the trial court erred in permitting Chafin to not testify pursuant to his Fifth Amendment right against self-incrimination.

{¶ 31} Finally, we note that, on this record, the trial court decision to not require Chafin to assert the privilege against self-incrimination on a question-by-question basis is harmless beyond a reasonable doubt. Chafin, guided by his attorney, unequivocally stated that he would answer no further questions. The trial court expressly considered the only two topics defense counsel discussed regarding Chafin (the affidavit content and alleged threats by police) and concluded that Chafin had a genuine risk to his Fifth Amendment rights. In other words, in this case, no prejudice flows from the court's alleged procedural failure in not addressing Chafin on a question-by-question basis. Based on these facts, appellant's arguments related to Chafin's assertion of his right against self-incrimination are not well-taken.

{¶ 32} Accordingly, we overrule appellant's first assignment of error.

## B.  Second Assignment of Error

{¶ 33} Under the second assignment of error, appellant contends that the trial court erred in excluding the affidavit of Chafin. Under this assignment of error, appellant argues in the alternative that if the trial court acted properly in not requiring Chafin to testify, then it should have admitted his affidavit pursuant Evid.R. 804(B)(3) or pursuant to his right to present a full and complete defense under the due process clause of the Fourteenth Amendment and the confrontation clause of the Sixth Amendment. For the following reasons, we disagree.

{¶ 34} As a preliminary issue, we note that appellant contends we should review de novo the portion of his assignment of error asserting that the trial court's exclusion of the affidavit violated the Constitution. He cites to *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 97, which states that, although generally an appellate court reviews a trial court's decision on admission of evidence, including hearsay rulings, for an abuse of discretion, evidentiary rulings that implicate the Confrontation Clause are reviewed de novo. *Id.*, citing *State v. Hymore*, 9 Ohio St.2d 122, 128 (1967). Appellant does not explain how the confrontation clause is implicated in his case, where he is the one seeking admission of a statement of an unavailable declarant, and the evidence was excluded. Rather, we find the essence of appellant's constitutional argument is his alleged lack of opportunity to present a full defense since the trial court would not admit Chafin's statement under Evid.R. 804(B)(3). A defendant's argument alleging his inability to present a complete defense and implicating a trial court's ruling under evidentiary rules is generally reviewed for an abuse of discretion. *State v. Swann*, 119 Ohio St.3d 552, 2008-Ohio-4837, ¶ 12-15, 32-33 (finding that the exclusion of inadmissible hearsay pursuant to Evid.R. 804(B)(3) does not deprive a defendant of his right to present a defense and remanding the case to this court to decide whether in applying Evid.R. 804(B) the trial court abused its discretion). Considering the above, we proceed to determine whether the trial court abused its discretion in refusing to admit Chafin's affidavit pursuant to Evid.R. 804(B)(3).

{¶ 35} Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 802 provides:

> Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio.

{¶ 36} Evid.R. 804(B) sets forth exceptions to the hearsay rule for statements made by declarants that are "unavailable." Pursuant to Evid.R. 804(B)(3), certain

statements against interest made by an unavailable declarant are not excluded as hearsay. Evid.R. 804(B)(3) defines a statement against interest as:

> A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true.

The rule further provides that "[a] statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the truthworthiness of the statement." Evid.R. 804(B)(3).

{¶ 37} Whether to admit the hearsay statement of an unavailable declarant, pursuant to Evid.R. 804(B)(3), is within the discretion of a trial court. *State v. Platt*, 10th Dist. No. 03AP-1148, 2005-Ohio-705, ¶ 74, citing *State v. Sumlin*, 69 Ohio St.3d 105 (1994), syllabus. An abuse of discretion implies the court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 38} The parties in this case agree that Chafin fits the definition of an "unavailable" declarant. Appellant essentially contends that if the affidavit was incriminating for purposes of the first assignment of error, which dealt with Chafin's assertion of his right against self-incrimination, then it also qualifies as a declaration against his penal interest.

{¶ 39} As with the first assignment of error, failure to proffer Chafin's affidavit for purposes of the record hinders our assessment of appellant's contentions. We do not know exactly what statement Chafin made in his affidavit to evaluate whether that statement was against his interest. As such, we find appellant has not met his burden of demonstrating error on appeal. *Sims* at ¶ 11, citing App.R. 16(A)(7); *State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 34.

{¶ 40} Moreover, even if we were to assume the contents of Chafin's affidavit based on the testimony provided, we disagree with the merits of appellant's argument. First, we disagree that if Chafin was properly permitted to not testify due to the danger of self-incrimination that the affidavit necessarily should not have been excluded under Evid.R.

804(B)(3). Separate standards apply to each issue. As previously discussed in the first assignment of error, the standard for whether a witness has a genuine risk of incriminating himself at trial extends to answers that may furnish proof of an element or link in the chain of evidence necessary to convict the witness of a crime. *Arnold* at ¶ 45. Specifically, under this standard, undisputed facts adduced at trial raised a clear danger of self-incrimination to Chafin should he have testified. On the other hand, the standard to determine whether Chafin's affidavit is admissible hearsay under Evid.R. 804(B)(3) requires that statement be "so far contrary to the declarant's pecuniary * * * interest, or so far tended to subject the declarant to civil or criminal liability, * * * that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true" and that corroborating circumstances clearly indicate the trustworthiness of the statement. The affidavit here presumably asserts that Chafin, as well as appellant, did not know about the cocaine. Furthermore, appellant's cited corroborating circumstances—the testimony of Peters that Chafin took the package from the porch to the vehicle—does not clearly indicate the trustworthiness of the statement.

{¶ 41} Considering the separate standards, we find the trial court did not act arbitrarily, unconscionably, or unreasonably in finding that Chafin's affidavit did not contain a statement against interest or corroborating circumstances clearly indicating the trustworthiness of the statement even though Chafin otherwise risked self-incrimination under the uncontested facts of the case if he testified. *See, e.g., Platt* at ¶ 77-78 (finding the trial court did not abuse its discretion in refusing to admit a letter into evidence made by that witness where the letter asserted his innocence). Therefore, the trial court did not abuse its discretion in excluding the affidavit.

{¶ 42} Accordingly, we overrule appellant's second assignment of error.

### C. Third Assignment of Error

{¶ 43} Under the third assignment of error, appellant contends that the trial court erred in imposing a fine of $20,000 because it did not consider appellant's ability to pay the fine after appellant filed the requisite affidavit of indigence. We disagree.

{¶ 44} In addressing mandatory fines, an appellate court must first examine the sentencing court's compliance with applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. *State v.*

*Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 75 (10th Dist.). *See, e.g., State v. Hayes*, 10th Dist. No. 08AP-233, 2009-Ohio-1100, ¶ 17. If the sentence is not clearly and convincingly contrary to law, the appellate court reviews whether the trial court abused its discretion in imposing the fine. *Pilgrim. See, e.g., State v. Small*, 10th Dist. No. 14AP-659, 2015-Ohio-3640, ¶ 40-41. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore* at 219.

{¶ 45} R.C. 2929.18(B)(1) requires a sentencing court to impose a fine for any first, second, or third-degree felony violation of R.C. Chapter 2925. However, in certain circumstances, an indigent offender may avoid the mandatory fine. To this point, R.C. 2929.18(B)(1) provides that:

> If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender.

{¶ 46} An offender who files an affidavit, pursuant to R.C. 2929.18(B)(1), is not automatically entitled to a waiver of the mandatory fine. *Small* at ¶ 40; *State v. Gipson*, 80 Ohio St.3d 626, 634 (1998) (stating that R.C. 2929.18(B)(1) "clearly require[s] imposition of a mandatory fine unless (1) the offender's affidavit is filed prior to sentencing, and (2) the trial court finds that the offender is an indigent person and is unable to pay the mandatory fines"). "The burden is on the offender to make that demonstration." *Small* at ¶ 40.

{¶ 47} A trial court's imposition of a fine, pursuant to R.C. 2929.18, is contrary to law if the record does not contain any evidence that the trial court considered the offender's present or future ability to pay the amount of the sanction or fine. *State v. Collier*, 184 Ohio App.3d 247, 2009-Ohio-4652, ¶ 11 (10th Dist.); *Hayes* at ¶ 17. This is a low standard: "some evidence in the record that the trial court considered [the offender's] present and future ability to pay the sanction" is adequate to meet the trial court's requirement under law. *Id.* at ¶ 14. A trial court is not required to expressly state that it considered an offender's ability to pay a fine. *State v. Parker*, 2d Dist. No. 03CA0017, 2004-Ohio-1313, ¶ 42; *State v. Hale*, 5th Dist. No. 14-CA-00010, 2014-Ohio-4981, ¶ 12;

*Collier* at ¶ 11.   Likewise, the trial court is not required to expressly consider certain factors or make specific findings.  *Hayes* at ¶ 14.  *See also State v. Johnson*, 10th Dist. No. 16AP-689, 2017-Ohio-5527, ¶ 45, quoting *State v. Plemons*, 2d Dist. No. 26434, 2015-Ohio-2879, ¶ 8 (noting that a trial court does not have to affirmatively find that an offender is able to pay).  "The court's consideration of that issue may be inferred from the record under appropriate circumstances."  *Parker* at ¶ 42.  A sentencing court need not hold an evidentiary hearing on the matter.  *Hayes* at ¶ 14.

{¶ 48} Here, appellant filed an affidavit of indigency, pursuant to R.C. 2929.18(B)(1), on October 31, 2016 and advised the court of the affidavit at the subsequent sentencing hearing.  Because appellant's drug convictions were violations of R.C. Chapter 2925, the trial court was required to impose a fine of no more than $20,000 but no less than $10,000.  R.C. 2929.18(A)(3); *Small* at ¶ 38.  The trial court imposed a fine of $10,000 on each of the two counts, with payment deferred while appellant is incarcerated.

{¶ 49} The record of this case contains evidence that the trial court considered appellant's present and future ability to pay the fee.  First, in its judgment entry, the trial court stated that it considered appellant's present and future ability to pay a fine and financial sanction.   Second, the record supports this statement.   At the sentencing hearing, the trial court stated that it would not make a finding that appellant was indigent and referenced appellant's ability to post the $100,000 surety or appearance bond and "plenty of evidence" in support of imposing a fee.  (Sentencing Hearing Tr. at 16.)  Third, the record of this case shows that appellant was CEO of a company and was stopped by officers in his company's car with over $1,000 cash on his person.  Furthermore, nothing in the record suggests that he is not an able-bodied person with some employment potential after his release from prison.  *Gipson* at 636; *Collier* at ¶ 14.

{¶ 50} Based on this record, we find that in sentencing appellant, the trial court considered his present and future ability to pay a fine and made no determination he is unable to pay the mandatory fine the statute authorizes.  Furthermore, appellant did not carry his burden to affirmatively demonstrate his inability to pay the mandatory fine.  *Small* at ¶ 40-41.  As a result, the record demonstrates that the fine imposed on appellant is neither contrary to law nor an abuse of the trial court's discretion.

{¶ 51} Accordingly, we overrule appellant's third assignment of error.

## IV. CONCLUSION

{¶ 52} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK, P.J., and BRUNNER, J., concur.

_____