[Cite as *State v. Hill*, 2023-Ohio-1556.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220330 |
| | | TRIAL NO. 22CRB-5036 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| MIESHA HILL , | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 10, 2023

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Connor E. Wood*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1} Defendant-appellant Miesha Hill appeals her misdemeanor assault conviction. For the reasons set forth below, we affirm the judgment of the trial court.

## Background

{¶2} The state charged Hill with misdemeanor assault after an altercation between Hill and her former neighbor, Tiniesh Wales. According to Wales's testimony at trial, on the day of the incident, Wales's acquaintance, Brigette Green, asked Wales to come to her home to help her with paperwork for her apartment. When Wales arrived at Green's home, she saw Hill. Hill and Wales had a history of problems, and Wales believed that she had been set up. Wales and Hill started arguing, and Wales proceeded to leave Green's home. According to Wales, Hill grabbed Wales by the hair. The two began tussling, and Hill kept swinging at Wales. Hill then grabbed an object and hit Wales above the eye. Because Wales had her head down and covered, she did not see the object. Wales started bleeding, and once Hill saw blood, she quit hitting her. Wales then left Green's home and called the police.

{¶3} An officer responded to Wales's call. The officer testified that Wales had a bleeding laceration above her left eye. Wales did not explain to the officer exactly where the incident had happened, so he did not go to Green's residence, but he did drive down the street, and no one was waiting outside.

{¶4} In Hill's defense, she called Green to testify. Green answered counsel's questions regarding her name, address, and her relationship with Hill, but then Green invoked her Fifth Amendment right not to incriminate herself when counsel asked whether she knew Wales, and whether she was at home on the day of the incident.

{¶5}     The defense then called Hill's friend, Marquetta Hunter, to testify. Hunter claimed that, on the day in question, she and Hill drove up to Green's residence to get a cigarette, and so that Hill could retrieve her mail.  Hunter went to Green's home and stood outside while Hill went to check her mailbox.  Hunter saw Wales following Hill, and she saw a shiny object in Wales's hand that she later learned was a knife.  Hunter saw Wales approach Hill and swing at her.  The two fought, but then Wales left.

{¶6}     Hill's boyfriend, Robert Coker, also testified on behalf of Hill.  Coker testified that he drove with Hill to Green's home on the day in question.  Coker was standing outside Green's home, and Hill went to check her mailbox.  Coker then saw Wales following Hill.  When the pair got closer to Green's home, Coker saw Wales holding a black-handled knife.  Wales tried to hit Hill with the knife, but Hill punched Wales instead.  The two fought, and Wales left.

{¶7}     Finally, Hill testified in her own defense.  Hill testified that she and Wales had been friends, but their relationship deteriorated.  On the day in question, Hill went to her mailbox, and Wales approached her.  Wales tried to start a fight with her, but Hill walked away towards Green's home.  Hill heard yelling, and she turned around and saw Wales coming at her with a knife.  Hill was able to get Wales to drop the knife, but Wales started swinging at her.  After the fight, Wales left, and Hill stayed at Green's home waiting for the police to arrive.

{¶8}     The trial court found Hill guilty of assault and sentenced her to one year of community control.  Hill appeals.

3

### Green Invokes the Fifth Amendment Privilege

**{¶9}** In her first assignment of error, Hill argues that the trial court erred in allowing Green to invoke the Fifth Amendment privilege against self-incrimination.

**{¶10}** The Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution declare that no person shall be compelled in any criminal case to be a witness against himself.

**{¶11}** A witness asserting the Fifth Amendment right against self-incrimination must assert "that he or she is faced with some authentic, objectively reasonable danger of incrimination." *State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, 62 N.E.3d 153, ¶ 44, citing *Hoffman v. United States*, 341 U.S. 479, 486-487, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). A reasonable danger of incrimination exists where a witness's answers "may reasonably have a tendency either to incriminate the witness or to furnish proof of an element or link in the chain of evidence necessary to convict the witness of a crime." *Id.* at ¶ 45. The Fifth Amendment "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444-445, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

**{¶12}** "Generally, a witness must assert the Fifth Amendment privilege against self-incrimination on a question-by-question basis." *State v. Smith*, 2017-Ohio-7740, 97 N.E.3d 1068, ¶ 20 (10th Dist.), citing *Vega v. Tivurcio*, 10th Dist. Franklin No. 14AP-327, 2014-Ohio-4588, ¶ 12. The trial court has a duty to inquire into the witness's justification for asserting the privilege. *Arnold* at ¶ 46.

**{¶13}** Hill argues that the trial court erred in failing to inquire as to the basis of Green's asserted Fifth Amendment privilege. Because Hill did not object to the trial court's inquiry below, this court reviews for plain error. *See* Crim.R. 52(B).

**{¶14}** Wales testified that Hill's assault occurred at Green's home. During Wales's cross-examination, defense counsel questioned Wales about Green's nickname as "the candy lady," and whether she sells cigarettes and other items out of her home. Wales testified in the affirmative. Defense counsel also repeatedly referred to the "candy lady" during the cross-examination of the investigating police officer.

**{¶15}** Following the state's case-in-chief, defense counsel called Green to testify. The trial court questioned whether Green wanted an attorney to advise her given Wales's testimony insinuating that Green deals drugs out of her home. Green responded that she wanted an attorney. The trial proceeded as to the other defense witnesses while the trial court called an independent attorney to advise Green. Green consulted with counsel and then returned to the witness stand. Green answered two questions regarding her relationship with Hill, but then she invoked her Fifth Amendment right not to testify regarding whether she knew the victim, or whether she was at home on the day of the incident. Defense counsel chose not to ask any more questions and did not object. The trial then proceeded with Hill's testimony.

**{¶16}** Even if the trial court erred in allowing Green to assert her right not to testify, Hill has not demonstrated plain error on the part of the trial court on this record. Defense attorney's reference to Green as the "candy lady" raised the Fifth Amendment concerns in the first place. When Green invoked her Fifth Amendment privilege in refusing to answer defense counsel's questions, Hill did not object to Green's refusal to answer the questions. Moreover, Green was a defense witness, and

5

Hill's attorney did not proffer any further questions. Therefore, this court has no way to determine the relevance of the questions and whether any answers to them would have been subject to the Fifth Amendment.

{¶17} We overrule Hill's first assignment of error.

### Sufficiency and Manifest Weight of the Evidence

{¶18} In her second assignment of error, Hill argues that her assault conviction is contrary to law.

{¶19} When considering a challenge to the sufficiency of the evidence, an appellate court determines whether, after viewing the evidence in a light most favorable to the prosecution, a rationale trier of fact could have found that the state proved all the elements of the offense beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. When considering a challenge to the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶20} The trial court found Hill guilty of misdemeanor assault in violation of R.C. 2903.13(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *." According to Hill, the trial court erred because Hill acted in self-defense to protect herself from Wales as Wales swung a knife at her.

{¶21} The trial court specifically rejected Hill's version of the facts in finding her guilty. The trial court found that the stories of Hunter, Coker, and Hill were

6

inconsistent, particularly in that all of them claimed to be driving the same car. The trial court also found portions of Hill's testimony incredible, for example, the trial court did not find it plausible that Hill would have turned her back to Wales and started walking away if Wales had been speaking to her in a threatening manner. The trial court also found Hunter's and Coker's testimony not credible in that the two testified that they saw Wales approach Hill with a knife, but neither intervened in any way. The trial court was in the best position to determine the credibility of the witnesses. *See State v. Landrum*, 1st Dist. Hamilton No. C-150718, 2016-Ohio-5666.

{¶22} The evidence brought forward by the state showed that Hill attacked Wales and hit her with an object, causing her eye to bleed. Wales called the police, and the responding officer testified that the cut on Wales's eye was "bleeding pretty good." None of the defense witnesses waited for the police or called police, despite their story that Wales had attempted to attack Hill with a knife. Viewing the evidence in the light most favorable to the state, the trial court could have found that Hill committed assault, and the trial court did not lose its way and create a manifest miscarriage of justice in finding Hill guilty. *See Jenks*, 61 Ohio St.3d at 273, 574 N.E.2d 492; *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶23} We overrule Hill's second assignment of error.

## Conclusion

{¶24} Having overruled Hill's assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**BERGERON, P.J.,** and **BOCK, J.,** concur.

7

Please note:

The court has recorded its own entry on the date of the release of this opinion.